IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>LUIS ALBERTO QUINTERO-JIMENEZ (01),<br><br>    Defendant. | Case No. 17-20038-01-DDC |

### MEMORANDUM AND ORDER

### Background

Defendant Luis Alberto Quintero-Jimenez pleaded guilty to Count I of the Superseding Indictment on the third day of his jury trial. *See* Doc. 611 (trial began on Thursday, October 31, 2019) & Doc. 617 (plea entered on Tuesday, November 5, 2019). Given his guilty plea and the terms of his written Plea Agreement, Doc. 621 at 5, the jury trial continued to verdict without him on charges against Mr. Quintero-Jimenez's co-defendant. Now, Mr. Quintero-Jimenez wants "to withdraw[] from the plea agreement entered into with the Respondent." Doc. 850 at 1. Close review of his motion reveals, however, that Mr. Quintero-Jimenez means for his motion to ask to withdraw "his plea before the court . . . ." *Id*. at 3.

Mr. Quintero-Jimenez's motion claims the government breached the plea agreement between the two parties. The breach occurred, Mr. Quintero-Jimenez claims, when the government did not—as promised, according to him—dismiss the charges against his wife, also a co-defendant in his case. Doc. 850 at 1. At least one premise of Mr. Quintero-Jimenez's motion is correct: the government didn't dismiss the charges against his wife, Ms. Cynthia Nayomie Rodriguez. Indeed, by the time Mr. Quintero-Jimenez pleaded guilty, Ms. Rodriguez

already had pleaded guilty to three charges against her. *See* Doc. 358 (showing entry of Ms. Rodriguez's plea on November 19, 2018). Like Mr. Quintero-Jimenez, Ms. Rodriguez had entered into a written Plea Agreement with the United States. Doc. 358. This written agreement called for the court to sentence her under the United States Sentencing Guidelines. Doc. 362 at 7 (sealed). And the court sentenced Ms. Rodriguez on December 23, 2019, some five weeks after Mr. Quintero-Jimenez's guilty plea. Doc. 692. She received a controlling sentence of 117 months against a Guideline range of 292 to 365 months. Doc. 449 at 21 & Doc. 699 at 2.

Some seven months after the court sentenced Ms. Rodriguez, Mr. Quintero-Jimenez filed his motion asking to withdraw his plea. *Compare* Doc. 850 (current motion filed on July 13, 2020) *with* Doc. 692 (Minute Sheet showing date of Ms. Rodriguez's sentencing hearing). Though Mr. Quintero-Jimenez was represented by counsel at the time, he filed the motion to withdraw as a pro se motion. Mr. Quintero-Jimenez also filed a separate pro se motion asking the court to appoint new counsel to represent him. Doc. 845. After conducting a hearing on the new counsel motion, the court initially denied his request. Doc. 858. But later, on the court's own motion, the court vacated that ruling and granted Mr. Quintero-Jimenez's motion for new counsel. Doc. 865. The court then appointed Mr. Quintero-Jimenez's current counsel, Mr. Braden M. Perry, to represent him. Doc. 870.

After providing Mr. Perry time to review the case, the court conducted a status conference on November 17, 2020. Doc. 899. The court scheduled the status conference to discern how Mr. Quintero-Jimenez wished to proceed on his pending motion to withdraw plea. Mr. Quintero-Jimenez's counsel advised that he believed the motion was ripe for ruling without additional briefing or oral argument. But counsel, acting with appropriate caution, asked for time to consult with Mr. Quintero-Jimenez one final time about that decision. Counsel orally

2

moved to establish a December 14, 2020 deadline to file a status report disclosing his client's request for future proceedings.  The court granted defendant's oral motion, ordering defense counsel "to file a status report that explicitly identifies whether the defendant wishes to make oral argument, wishes to file a reply and/or any other specific procedures he is requesting as appropriate for his" withdraw plea motion.  Doc. 899.  On December 9, Mr. Quintero-Jimenez's counsel filed his Status Report.  Doc. 903.  This report advised that "[a]fter consultation with Defendant, the undersigned [counsel] and Defendant agree the issue is ripe for ruling without any additional briefing or oral argument."  *Id*.

This Order now decides Mr. Quintero-Jimenez's pending motion.

## **Analysis**

Because the court has accepted Mr. Quintero-Jimenez's guilty plea, Fed. R. Crim. P. 11(d)(2)(B) applies.  It permits a defendant to withdraw a guilty plea if he "can show a fair and just reason for requesting the withdrawal."  *Id*.  Mr. Quintero-Jimenez "bears the burden of establishing a 'fair and just reason.'"  *United States v. Hamilton*, 510 F.3d 1209, 1214 (10th Cir. 2007) (quoting *United States v. Black*, 201 F.3d 1296, 1299 (10th Cir. 2000)).

While a motion to withdraw a plea "should be 'freely allowed,'" *United States v. Kramer*, 168 F.3d 1196, 1202 (10th Cir. 1999), the Circuit has identified a seven-factor test to guide the analysis.  The factors evaluate:  "(1) whether the defendant has asserted his innocence, (2) prejudice to the government, (3) delay in filing defendant's motion, (4) inconvenience to the court, (5) defendant's assistance of counsel, (6) whether the plea is knowing and voluntary, and (7) waste of judicial resources."  *Hamilton*, 510 F.3d at 1214 (quoting *United States v. Gordon*, 4 F.3d 1567, 1572 (10th Cir. 1993)).  The Court of Appeals also has suggested an eighth factor— "likelihood of conviction."  *United States v. Sanchez-Leon*, 764 F.3d 1248, 1258 (10th Cir.

2014).  But when a defendant fails to carry his burden, "on asserted innocence, validity of the plea (whether it was given knowingly and voluntarily), and ineffective assistance of counsel, the court need not address 'the remaining factors . . . because these [remaining] factors speak to the potential burden on the government and the court, rather than the defendant's *reason* for withdrawal."  *Id*. at 1258 (citations omitted, ellipses and bracket in original).  Below, the court applies the relevant factors to Mr. Quintero-Jimenez's motion.[1]

On the first factor—asserted innocence—Mr. Quintero-Jimenez's motion never asserts he is innocent of the charge he pleaded guilty to committing.  This factor disfavors granting the motion.

The court next turns to the sixth factor.  This factor is more nuanced.  As *Sanchez-Leon* explained, this factor asks whether the defendant's guilty plea "was given knowingly and voluntarily."  764 F.3d at 1258.  Mr. Quintero-Jimenez's motion never suggests that he was confused or forced to plea guilty.  So, it would seem, Mr. Quintero-Jimenez isn't claiming that he didn't understand what he was doing, or that he was forced to plead guilty.  But the court must construe his pro se filing liberally, *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972), and when it does the court detects the possibility that Mr. Quintero-Jimenez intended to assert his

---

[1] The court understands that Mr. Quintero-Jimenez's motion claims that the United States breached the plea agreement with defendant.  Because analysis of his claim lends itself more easily to the withdraw plea factors, the court uses that framework.  But if the court instead had chosen to express its analysis using the breach of plea agreement framework, it would lead to the same conclusion.  *See United States v. Rodriguez-Rivera*, 518 F.3d 1208, 1212–13 (10th Cir. 2008).

This plea agreement rubric requires the court to determine whether the government has breached the plea agreement.  *Id.*  This, in turn, requires the court to "rely on general principles of contract law, and therefore look to the express language in the agreement to identify both the nature of the government's promise and the defendant's reasonable understanding of this promise at the time of the entry of the guilty plea."  *Rodriguez-Rivera*, 518 F.3d at 1212–13 (citation and internal quotations omitted).  This is precisely the approach used by this Order's analysis of *Hamilton*'s sixth factor.  For reasons explained in full there, the court also finds that the government did not breach its plea agreement with Mr. Quintero-Jimenez.

4

plea wasn't knowing or voluntary. Specifically, Mr. Quintero-Jimenez's motion claims that his plea deal was, in reality, a two-defendant deal. Namely, he would plea guilty to Count I and recommend 240 months in prison for himself and, in exchange, the government would dismiss the other changes against him and dismiss the pending charges against his wife, Ms. Rodriguez. Doc. 850 at 1. The problem with this argument, for Mr. Quintero-Jimenez, is that the record plainly precludes it.

As the government points out, Mr. Quintero-Jimenez's written Plea Agreement contains a merger clause asserting that the parties' written expression of their bargain with one another is a fully integrated writing. This clause provides:

> 17. **No Other Agreements**. The defendant has had sufficient time to discuss this case, the evidence, and this plea agreement with his attorney and he is fully satisfied with the advice and representation his attorney provided. Further, the defendant acknowledges that he has read the plea agreement, understands it, and agrees it is true and accurate and not the result of any threats, duress or coercion. The defendant further understands that this plea agreement supersedes any and all other agreements or negotiations between the parties, and that **this plea agreement embodies each and every term of the agreement between the parties.**

Doc. 621 at 11 (emphasis added). One cannot find even a phrase in paragraph 17 or any other corner of the Plea Agreement supporting Mr. Quintero-Jimenez's current proposition—that the government agreed to dismiss all charges against Ms. Rodriguez in exchange for Mr. Quintero-Jimenez's guilty plea. And if defendant intended for his motion to assert that the government

gave him oral assurances to that effect but those hypothesized promises didn't find their way into the parties' written Plea Agreement, the same provision dispatches that argument to failure as well. Paragraph 17 provides: "The defendant further understands that his plea agreement supersedes any and all other agreements or negotiations between the parties . . . ." *Id*.

Nor can the record abide any claim that Mr. Quintero-Jimenez didn't understand the ramifications of his written Plea Agreement. During the hearing where the court accepted his guilty plea, the prosecutor provided an oral summary of the key provisions in that written agreement. Doc. 854 at 11–15. His oral summary included this statement about paragraph 17: "The defendant further understands his plea agreement supersedes any and all other agreements or negotiations between the parties, and that this plea agreement embodies each and every term of the plea agreement between the parties." *Id.* at 15. The court questioned Mr. Quintero-Jimenez to ensure that he agreed with the prosecutor's summary of the plea agreement. Specifically, the court had this exchange with Mr. Quintero-Jimenez, who was under oath:

> THE COURT:  Mr. Quintero-Jimenez, is your understanding of your plea agreement with the United States government consistent with everything the prosecutor just said?
>
> THE DEFENDANT:  Excuse me?
>
> THE COURT:  I asked if your understanding of your plea agreement with the United States government is consistent with everything the prosecutor just said?
>
> THE DEFENDANT:  Yes.

*Id*. at 15. The court followed up on this exchange, asking defendant whether he personally had signed the written Plea Agreement. He said he had. *Id*. at 26. Then, the court had this exchange with Mr. Quintero-Jimenez:

6

> THE COURT:  And did you sign this plea agreement because it is, in fact, your plea agreement with the United States government in your—in your case?
>
> THE DEFENDANT:  Yes.
>
> THE COURT:  And does your signature confirm that you personally agree to all the promises and terms and conditions that are in this plea agreement?
>
> THE DEFENDANT:  Yes.

*Id.* All these exchanges with Mr. Quintero-Jimenez followed some introductory questions where Mr. Quintero-Jimenez assured the court that he was thinking clearly, he knew what he was doing, and no one ever had threatened him or tried to force him to plead guilty to anything. *Id.* at 5, 8–9.  In sum, the court finds now, as it did at the end of his plea hearing, *id.* at 27, that Mr. Quintero-Jimenez's plea to Count I was knowing and voluntary.  This factor thus disfavors Mr. Quintero-Jimenez's request to withdraw his guilty plea.

The court next considers the fifth factor—"defendant's assistance of counsel." *Hamilton*, 510 F.3d at 1214.  The defendant's motion never asserts that his counsel was ineffective. *See* Doc. 850.  And, during the plea hearing, the court asked Mr. Quintero-Jimenez about his satisfaction with his counsel, Forrest Lowry.

> THE COURT:  Are you satisfied with the way Mr. Lowry has represented you in this case?
>
> THE DEFENDANT:  Yes.
>
> THE COURT:  And are you satisfied with the legal advice he's given you?
>
> THE DEFENDANT:  Yes.

7

Doc. 854 at 8.  Mr. Quintero-Jimenez also confirmed that he personally had made the decision to plea guilty to Count I.  *Id.*[2]  Given this record, and Mr. Quintero-Jimenez's failure to identify any instance of ineffectiveness, the court concludes that this fifth factor also disfavors his motion to withdraw plea.

Because Mr. Quintero-Jimenez has failed to carry his burden on the asserted innocence, plea validity, and assistance of counsel factors, *Hamilton* and *Sanchez-Leon* dispense with the need to examine the other four factors.  *See* 764 F.3d at 1258.  But given the importance of this motion and the significant sentence called for by Mr. Quintero-Jimenez's Plea Agreement under Rule 11(c)(1)(C), the court nonetheless will address those factors.

Factor two weighs "prejudice to the government," if the court were to allow defendant to withdraw his plea.  *Hamilton*, 510 F.3d at 1214.  The government plainly would sustain some prejudice.  In some sense it already has tried this case once because the charges against Mr. Quintero-Jimenez's co-defendant proceeded to verdict after Mr. Quintero-Jimenez had pleaded guilty.  This trial against the lone remaining defendant required the government to present at least some of the evidence it would have presented in its case against Mr. Quintero-Jimenez.  But the prosecutor narrowed the case because the lone remaining co-defendant was a buyer of methamphetamine from a trafficking organization involving Mr. Quintero-Jimenez and his wife.  So, if the court allowed Mr. Quintero-Jimenez to withdraw his plea and the case against him

---

[2] The court is mindful that Mr. Quintero-Jimenez filed a pro se motion asking the court to replace Mr. Lowry, who served as his trial counsel and was the attorney representing him when he pleaded guilty. Doc. 845.  But this motion, filed more than eight months after Mr. Quintero-Jimenez pleaded guilty and just a few weeks before his motion to withdraw plea, asserted that Mr. Lowry had agreed to "begin with pretrial filings" but did not pursue any such filings.  *Id.* at 1.  The court engaged Mr. Quintero-Jimenez in a colloquy to discern the filings that defendant thought Mr. Lowry should have made.  He did not identify any motions, but his counsel surmised he meant to refer to motions to suppress.  On this record, the court can find no credible basis to believe that Mr. Quintero-Jimenez received ineffective assistance of counsel.

8

proceeded to trial, the government would sustain at least some prejudice. This factor disfavors Mr. Quintero-Jimenez's motion but only by a small margin because the government reduced its evidentiary load after Mr. Quintero-Jimenez had pleaded guilty.

The third factor inquires about "delay in filing defendant's motion." *Hamilton*, 510 F.3d at 1214. This factor disfavors Mr. Quintero-Jimenez's request to withdraw his plea. Mr. Quintero-Jimenez pleaded guilty on November 5, 2019. Less than two months later, on January 2, 2020, the court sentenced his wife, Ms. Rodriguez to 117 months in federal prison. Mr. Quintero-Jimenez should have realized by then—if not sooner—that the government hadn't dismissed the charges against his wife, as he claims it had promised him. Mr. Quintero-Jimenez didn't file his motion to withdraw plea until mid-July 2020, more than six months after his wife was sentenced. Mr. Quintero-Jimenez's motion provides no explanation for his delay.

The remaining factors—"inconvenience to the court" and "waste of judicial resources," *Hamilton*, 510 F.3d at 1214—don't move the needle materially. They thus are neutral.

In sum, the three most prominent factors disfavor the conclusion that Mr. Quintero-Jimenez has established a "fair and just reason" for withdrawing his guilty plea. Fed. R. Crim. P. 11(d)(2)(B). And when the court considers all seven factors, five disfavor his motion and the other two are neutral. The court thus concludes that defendant Luis Alberto Quintero-Jimenez has failed to carry the burden assigned him by Rule 11(d)(2)(B) and our Circuit's precedent. Consistent with those authorities, the court denies Mr. Quintero-Jimenez's motion to withdraw his guilty plea.[3]

---

[3] Because the Circuit hasn't explicitly adopted it as part of the governing test, the court's analysis and conclusion does not rely on the so-called eighth factor—"likelihood of conviction." *See Sanchez-Leon*, 764 F.3d at 1258. But if the court were to add that factor to its analysis, it merely would enhance the court's conviction in its ruling. In the trial of Mr. Quintero-Jimenez's co-defendant, the court heard some of the government's evidence about the drug trafficking organization involving Mr. Quintero-Jimenez . It included recordings and transcripts derived from a Title III Order issued by the court. It

**IT IS THEREFORE ORDERED BY THE COURT** that defendant Luis Alberto Quintero-Jimenez's pro se Motion for Withdrawal of Plea Agreement (Doc. 850), which the court views as a motion to withdraw guilty plea, is denied.

**IT IS SO ORDERED.**

**Dated this 7th day of January, 2021, at Kansas City, Kansas.**

<u>s/ Daniel D. Crabtree</u>
**Daniel D. Crabtree**
**United States District Judge**

---

included testimony by Mr. Quintero-Jimenez's wife about drug trafficking. After presiding over the jury trial where some of the evidence inculpating Mr. Quintero-Jimenez was presented, the court finds that the "likelihood of conviction" of Mr. Quintero-Jimenez is overwhelming. It, too disfavors Mr. Quintero-Jimenez's motion.

10